JOHN BOYLE *v.* EDWARD ROCHE and others.

In an action for the alleged unlawful detention and conversion of a draft or bill of exchange, the plaintiff's evidence was, that a witness had bought the draft from the defendants in New York, drawn by them in the plaintiff's favor, on the Royal Bank of Ireland ; that the witness left it in their office to be sent to Ireland for the plaintiff ; that it was so sent, and was returned paid to the defendants, from whom, before suit, the witness demanded the draft for the plaintiff, and they refused delivery to the witness ; that the plaintiff's name appeared endorsed thereon, but not in his handwriting. The defend-

ants proved that the draft was returned to them by the bank, stamped paid; that they were in the habit of issuing large numbers of similar drafts—not ordinarily, however, sending them to Ireland themselves, but keeping a mail bag in their office into which letters containing drafts purchased from them were often dropped. *Held,* that the evidence was too loose and indeterminate, to warrant a judgment for the plaintiff.

The evidence being that the draft was *sent,* the burden was upon the plaintiff to prove that he did not receive it.

A plaintiff is not, in general, bound to prove a negative; but he must establish facts, whether negative or affirmative, enough to put the defendant in default.

Proof of a demand and refusal is only *prima facie* evidence of a conversion of personal property.

APPEAL by the defendants from a judgment against them for an alleged unlawful detention and conversion of a draft drawn upon the Royal Bank of Ireland. The case and evidence are distinctly stated in the opinion.

BY THE COURT. WOODRUFF, J.—It is difficult to discover upon what precise finding of facts the judgment in this case was rendered. The plaintiff proved by the witness, McManus, that in April, 1850, he bought a bill or draft for £4, or twenty dollars, from the defendants, drawn by them in favor of the plaintiff on the Royal Bank of Ireland; that he left the draft *in the defendants' office* to be sent to Ireland for the plaintiff; that the defendants sent it to Ireland, and that the draft was paid; and that the defendants now have the draft in their possession. That the *witness,* before this action was tried, *i. e.,* before the 8th of June, 1853, went to the defendants to get the draft for the plaintiff, and they refused to give it to the witness. A portion of this proof consists of the defendants' declarations; but as those declarations are given in evidence by the plaintiff himself, they are properly taken as evidence against him.

This evidence is quite consistent with the testimony of the defendants' witness, who produces the draft, and states, that it was issued by the defendants in favor of the plaintiff, and was returned to the defendants by the Bank of

Boyle *v.* Roche.

Ireland, the drawee, stamped paid by the stamp of the bank which appears on the draft. That the defendants issue a great many drafts, but never themselves send them to Ireland, except where the draft is from the country, or from some person in the country. But that there is a mail bag in their office into which drafts purchased from them are dropped. The obvious meaning of which is, that when the purchaser resides out of the city, and sends to them to forward funds to Ireland, they issue the draft, and forward it to Ireland accordingly. But when the purchaser is in the city, they do not undertake the duty of forwarding, although they keep a mail bag in their office, by which such purchasers are in the habit of themselves forwarding such drafts, depositing them therein for that purpose. And it is quite probable that what the witness, McManus, means by leaving the draft in the defendants' office is, that he deposited it in that mail bag.

It is further testified, by the plaintiff's son, that the name, John Boyle, (which is the name of the plaintiff, the payee,) now appearing endorsed upon the back of the draft, is not the handwriting of the plaintiff.

This action is now brought against the defendants for an unlawful detention of the draft, and the conversion thereof to their own use. And the court below have rendered judgment in the plaintiff's favor for the sum of twenty dollars and costs.

I do not think, that upon any view of the facts proved, the plaintiff was, as matter of law, entitled to the judgment. And it seems to me plain, that the evidence was altogether too loose and indeterminate, to warrant any finding upon which the judgment could be sustained.

If it be assumed that the defendants undertook to send the draft to Ireland, the uncontradicted evidence is, that they did so. The plaintiff did not show that there was, in this respect, any failure on their part to perform their undertaking. He did not prove what their undertaking was with any particularity. To whom was it to be sent, or to what address, is

not shown. Failing to prove what the destination of the draft was, he wholly failed to show that it did not reach its destination, or that it was not received there by the very person to whom they were requested to send it, (if any such request was made.) It does not appear whether the plaintiff was then in Ireland or not. If it be assumed, that because the witness says he "left it in the defendants' office to be sent to Ireland for the plaintiff," he meant not merely that he, *acting for the plaintiff*, left the draft in the office to be sent to Ireland, but that it was to be sent *to the plaintiff* in Ireland, and that it is, therefore, to be assumed that the plaintiff was then there, then the plaintiff failed to put the defendants *in default;* for there is no evidence that the plaintiff did not receive it, while there is evidence that the defendants sent it.

Beyond all question, the draft was sent to Ireland—was received at the bank upon which it was drawn—and was, according to universal custom in relation to bank checks or drafts, returned in due course to the drawers.

The judgment cannot, therefore, be sustained, upon the idea that the defendants did not send the draft to Ireland.

But it is claimed, that if it was sent to Ireland, it got into wrong hands, and if paid by the bank, it was paid to the wrong person, and therefore, that although now in the defendants' possession, it is still the plaintiff's property, and he had a right to demand its delivery, and the refusal to deliver was proof of conversion.

The theory of the plaintiff's counsel may perhaps be correct, but his proof fails. The plaintiff failed to prove that the plaintiff did not receive it; and, after the proof that it was sent, the burden rested upon him to do so; and he did not even show that the plaintiff did not in fact receive the money thereon. The fact that the name of John Doyle appearing on the draft was not the plaintiff's handwriting, although it justified a suspicion that it had been received by and was paid to some other person bearing the same name, was by no means legal evidence of such a state of facts, sufficient to

warrant a recovery. Such proof is entirely consistent with the assumption that his name was endorsed at his request. It is true, in general, that a plaintiff is not bound to prove a negative; but he must prove facts enough, whether *negative* or *affirmative*, to put the defendants in default.

Besides this, a demand and refusal are not conclusive proof of conversion to the defendants' use. Refusal is not conversion. They are *prima facie* evidence of a conversion. It is plain that there has been no *actual* conversion of the draft to the defendants' use; on the contrary, if any inference on the subject is warranted by what is proved, it is that they have been made *debtors* to the bank in the amount of the draft. Under such circumstances, the plaintiff should be required to prove very clearly that they are in some default before they should be held liable, and a judgment ought not to be rendered against them upon facts entirely consistent with the faithful discharge of duty on their part, and with the assumption that the plaintiff has himself received from the Bank of Ireland the very money which seems to have been intended for his use.

I think the judgment should be reversed.